**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NAN HUI CHEN,** | Case No.: 13-CV-3352 YGR |
| Plaintiff, | **ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND** |
| v. | |
| **DEUTSCHE BANK NATIONAL TRUST CO.,** *et al.*, | |
| Defendants. | |

Plaintiff Nan Hui Chen ("Plaintiff") brings this civil action against Defendant Deutsche Bank National Trust Company, Western Progressive, Mortgage Electronic Registration Systems, Inc., and Ocwen Loan Servicing LLC ("Defendants").[1] Plaintiff alleges nine causes of action relating to the management of her loan, deed of trust, and promissory note. (*See generally*, Dkt. No. 1.) Defendants have filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 33.)

Having carefully considered the papers submitted, the pleadings in this action, the arguments presented at hearing on April 29, 2014, and for the reasons set forth below, the Court hereby **GRANTS** in part Defendants' Motion to Dismiss with leave to amend.[2]

---

[1] Although this action commenced in July of 2013, to date Defendant Securitized Asset Backed Receivables, LLC has not been served. Accordingly Securitized Asset Backed Receivables, LLC is dismissed. *See* Fed. R. Civ. P. 4(m).

[2] Both Plaintiff and Defendants have filed Requests for Judicial Notice. (Dkt. Nos. 34, 38.) The Court **GRANTS** Defendants' Request for Judicial Notice. The documents for which Defendants seek judicial notice are documents to which Plaintiff refers repeatedly in her Complaint. Although Plaintiff disputes their legitimacy, these documents are publicly recorded and form the substance of her allegations. A court may treat certain documents as incorporated by reference into Plaintiff's

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Johnson v. Lucent Techs., Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

A court may also dismiss a complaint for failure to comply with Federal Rule 9(b). *See Vess v. Ciba–Geigy Corp., USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged

---

complaint if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The essence of Plaintiff's opposition to Defendants' request for judicial notice concerns the legal validity and truthfulness of these documents, not their existence or the fact that they have been recorded. Accordingly, the Court grants Defendants' Request for Judicial Notice as to the existence of these documents, not the truth of their contents.

2

generally." Fed. R. Civ. P. 9(b). Such circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Id.* at 765 (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir. 1989)). Claims subject to Rule 9(b) pleading requirements must also satisfy the ordinary pleading requirements of Rule 8.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## BACKGROUND

In 2006, Plaintiff entered into a loan with New Century Mortgage Corporation in the amount of $206,310.00. As security against the loan, Plaintiff signed a deed of trust, naming Mortgage Electronic Registration Systems, Inc. as beneficiary and nominee for the lender. The lender was New Century Mortgage Corporation. The Trustee was First American Title Company. (Dkt. No. 1, Ex. 6 at 1.)

Since 2006, the interest in Plaintiff's loan and deed of trust has changed hands and Plaintiff has defaulted on her loan payments. On July 18, 2013, Plaintiff filed the instant action to stop the trustee sale of her home (Dkt. No. 1 at 9), alleging that Defendants, who purport to be the current interested parties in her mortgage loan, in fact have no such interest. (*Id.* at 2.) Plaintiff claims that not only do Defendants have no right to collect or foreclose, but that moreover, they have "created a series of documents that contain materially false representations," and are falsely representing that they have a right to foreclose. (*Id.*) She further alleges that the Defendants and their predecessors did not execute valid transfers of rights and that therefore, Defendants do not have legally cognizable interests in the balance of her loan or in the subject property.

3

On December 23, 2013, Defendants filed the instant Motion to Dismiss. (Dkt. No. 33.) Plaintiff failed to file a timely response thereto, prompting this Court to issue an Order continuing the hearing on Defendants' motion and providing Plaintiff additional time in which to file an opposition brief. (Dkt. No. 35.) On April 29, 2014, the Court entertained oral argument on Defendants' Motion to Dismiss. For the reasons set forth on the record at the hearing, upon careful consideration of the papers and relevant statutory and case law, and for the reasons set forth below, the Court grants the motion with leave to amend.

## DISCUSSION

As an initial matter, the Court notes that Plaintiff's complaint is not a model of clarity. Many of the allegations in Plaintiff's complaint are unclear and appear disjointed. For this reason alone, Plaintiff's complaint does not plausibly state claims for relief. Nonetheless, having construed all facts alleged in the light most favorable to Plaintiff, the Court addresses each of Defendants' arguments in turn, below.

**1. Claims again Western Progressive**

Defendants maintain that because Western Progressive was acting as a trustee in a nonjudicial foreclosure, Western Progressive had no fiduciary duties to Plaintiff and its actions were purely ministerial. (Dkt. No. 33 at 3.) Plaintiff counters that she told Western Progressive that its actions were allegedly wrongful, demanded that Western Progressive cease and desist, and Western Progressive continued to effectuate the nonjudicial foreclosure. (Dkt. No. 36 at 7; *see also* Dkt. No. 1 at 9.)

The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary. *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 335, (Cal. App. 2d 2008). The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes. *Id.* No other common law duties exist. *Id.* (citations omitted). However, "a trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal. App. 3d 1, 7 (Ca. Ct. App. 1970) (citations omitted).

Plaintiff appears to argue that despite sending a cease and desist letter to Western Progressive in May of 2013, Western Progressive continued to effectuate nonjudicial foreclosure proceedings. (Dkt. No. 36 at 7.) That, without more, does not establish that Western Progressive acted with the requisite intent to overcome the presumption that it was performing purely ministerial duties as trustee, which are protected in the context of nonjudicial foreclosures. Plaintiff's claims against Western Progressive are therefore dismissed with leave to amend.

**2. Claims against New Century Mortgage Company's status as the lender**

Defendants next assert that all claims as to New Century Mortgage Company ("NCMC") should be dismissed because Plaintiff has failed to plead facts sufficient to establish that NCMC is not the true lender. Plaintiff counters that she has alleged that NCMC was never the true "lender," but was "merely a broker" through which certain "Doe Investors" funded Plaintiff's loan. (Dkt. No. 36 at 7; *see also* Dkt. No. 1 at 2, 9.) Despite having reviewed the Complaint for all substantiating allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to state a plausible claim that NCMC was not the true lender of her loan.

In the section of her Complaint titled "Allegations Common to All Causes of Action," Plaintiff alleges that NCMC was not the "true lender" of her mortgage loan. (*See* Dkt. No. 1 at 9.) Subsequent allegations do not substantiate this conclusion: Plaintiff then goes on to allege facts challenging the validity of NCMC's subsequent transfers of interest, not facts that challenge NCMC's status as the lender in the first instance. For example, Plaintiff alleges that "NCMC and NC Capital failed to 'consummate' the sale of Plaintiff's loan, Note or Deed of Trust through transfer and delivery." (*Id*. at 10.) Plaintiff further alleges that "NCMC received an undisclosed yield spread premium on Plaintiffs loan and that Plaintiff did not become aware of this fact until June of 2013." (*Id*.) It is unclear exactly how these facts bear on Plaintiff's claim that NCMC was never the "true lender" of her mortgage loan, or how they plausibly support a theory upon which Plaintiff can recover.

Later in Plaintiff's complaint, during her discussion of the enumerated causes of action, she alleges that "NCMC did not provide 'sufficient consideration' as required under California Civil Code § 1550." (Dkt. No. 1 at 11.) Plaintiff furthermore alleges that "consideration was paid by

5

unidentified DOE investors." (*Id.*) Elsewhere, Plaintiff alleges that "NCMC obscured the real creditor of the funds when in truth it was a mere broker collecting fees" and that it "never had any money at risk." (*Id.* at 22-23.) Nowhere does Plaintiff clearly allege facts that establish when NCMC planned the transfer of the mortgage to the purported unknown investors or the nature of that transaction. Similarly, Plaintiff fails to allege any facts to establish that NCMC "concealed" or "obscured" said negotiations. Plaintiff's allegations, without more, do not provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

Moreover, to the extent Plaintiff alleges that NCMC fraudulently misrepresented that it was the true lender or "obscured" the identify of Doe investors, Plaintiff has also failed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Such circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). Plaintiff has not alleged circumstances constituting any fraud by NCMC such that the requirements of Rule 9(b) are satisfied. Thus, as to claims predicated upon NCMC's status as the original lender, said claims are dismissed with leave to amend.

**3. Claims against MERS's status as the beneficiary acting as nominee for the lender**

Defendant argues that Plaintiff's attack on MERS's ability to assign the beneficial interest and substitute a trustee under a deed of trust lacks sufficient support. (Dkt. No. 33 at 4.) Defendant points to the fact that on the deed of trust, MERS is identified as the beneficiary of NCMC and its assigns. (*See id.*; *see also* Dkt. No. 1, Exh. 1.) Plaintiff counters that "MERS made an assignment after the agency relationship with NCMC had been repudiated (by statute and by termination) and NCMC had no assets to transfer; MERS completed the assignment without subscribing the 'principal' for which it acted and by an individual not authorized to act as an officer of MERS which renders the assignment void and subject to cancellation ...." (Dkt. No. 36 at 8.) Plaintiff

6

appears to challenge either MERS's ability to assign its own interest, or possibly NCMC's interest, in the subject deed of trust.

As an initial matter, the Court notes that the allegations in Plaintiff's complaint are generally unclear and that specifically with respect to MERS's role, Plaintiff's complaint lacks the clarity necessary to plausibly state a claim for relief. Nonetheless, the Court has reviewed Plaintiff's complaint in detail and has analyzed the allegations therein as to MERS. Plaintiff alleges that "on or about March 19, 2008, the New Century Bankruptcy Trustee repudiated the contract between New Century Mortgage and MERS." (Dkt. No. 1 at 5.) Plaintiff makes no allegation as to how this bears on the fact that MERS was the recorded beneficiary on the deed of trust, which was signed in 2006. Later on in the complaint, Plaintiff alleges that "the assignment of deed of trust violates California Statute of Frauds §1624(a)(3) in that MERS cannot assign a beneficial interest in a Deed of Trust without naming the principal to whom it acts as nominee." (Dkt. No. 1 at 15.) But nowhere has Plaintiff alleged that MERS failed to "name the principal," or even explained how this bears on her claims or supports an articulated legal theory. Moreover, the Court has reviewed the assignment of the deed of trust and finds that it reflects that MERS was acting as nominee for NCMC and its successors and assigns; thus, it would appear that MERS was acting on behalf of the principal for whom it acted as nominee. (Dkt. No. 34, Exh. 2.) Therefore, Plaintiff has failed to provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" as to whether MERS lacked the authority to assign any interest – its own, or NCMC's interest – in the subject deed of trust. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Separately in her Opposition, Plaintiff argues that MERS lacks the authority to institute nonjudicial foreclosure proceedings. (Dkt. No. 36 at 13.) The Court notes that Plaintiff points to no paragraph of her Complaint that substantiates her argument that MERS lacked the requisite authority to institute foreclosure proceedings. Indeed, the deed of trust that Plaintiff signed, attached to her Complaint, contemplates specifically that MERS *will* have such authority. (*See* Dkt. No. 1, Exh. 1 at 3, "MERS (as nominee for Lender and Lender's successors and assigns) has the right [...] to foreclose and sell the property [...] .")

7

Moreover, to the extent Plaintiff's claims against MERS sound in fraud, for example, that "MERS [...] knew that the Assignment was false and caused the same to be recorded with the San Mateo County Recorder" (Dkt. 1 at 22), such allegations must meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b).  Again, Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Such circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz*, 476 F.3d at 764 (quoting *Edwards*, 356 F.3d at 1066).  Plaintiff has failed to offer sufficient factual detail to meet this standard.

Thus, as to claims predicated upon MERS's status as the beneficiary acting as nominee for the lender and as to MERS's authority to institute foreclosure proceedings, Plaintiff has failed to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Defendants' Motion to Dismiss on this ground is therefore granted with leave to amend.

**4. Cancellation of Instruments**

Plaintiff's first cause of action is for cancellation of instruments.  In her Complaint, Plaintiff lists certain instruments for which she seeks cancellation, including the deed of trust, two notices of default issued January 7, 2011 and April 21, 2011, a substitution of trustee, an assignment of deed of trust, and a notice of sale.  (*See* Dkt. No. 1 at 11-15.)  The Court may order cancellation of an invalid written instrument that is void or voidable.  *Compass Bank v. Petersen*, 886 F.Supp.2d 1186, 1194 (C.D. Cal. 2012) (citing Cal. Civ. Code § 3412 *et seq.*).  "A written instrument, in respect to which there is reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."  Cal. Civ. Code § 3412.

Defendants challenge Plaintiff's attempt to cancel:  (1) the deed of trust ; (2) two notices of default; (3) the substitution of trustee recorded on October 29, 2012; (4) the assignment of the deed of trust; and (4) the notice of trustee's sale.  The Court considers each in turn.

### a. Deed of Trust

Plaintiff alleges that the deed of trust was false from conception and therefore should be cancelled. (Dkt. No. 1 at 11.) Defendants counter that Plaintiff has failed to allege facts sufficient to overcome the general four-year statute of limitations period set forth in California Code of Civil Procedure section 343, or the specific three-year statute of limitations for fraud claims set forth in California Code of Civil Procedure section 338(d). (Dkt. No. 33 at 5.) Defendants claim that because the deed of trust was signed in November 2006, the statutes of limitations have run. Beyond that, Defendants argue that Plaintiff has failed to allege facts to support her contention that the deed of trust was, in fact, fraudulent from conception (*i.e*., that NCMC was not the true "lender," MERS was not the beneficiary, or that First American Title Company was not the trustee). In opposition, Plaintiff appears to assert that the deed of trust should be cancelled because of *subsequent*, allegedly improper assignments. (*See* Dkt. 36 at 17, citing to Section B.2.) Plaintiff further argues that the statute of limitations on this claim should be tolled to December 2010, which is when she first had reason to "suspect that there had been any untoward activities." (*Id*. at 5.)

Whether there were or were not subsequent assignments of the deed of trust cannot support Plaintiff's allegation that the deed of trust was false from conception. (*See* Dkt. No. 1 at 11.) Plaintiff claims that the deed of trust did not "identify the 'true' parties to the transaction or the contracts" and that "NCMC did not provide 'sufficient consideration.'" (*Id*.) However, as explained above, Plaintiff has failed to allege sufficient facts to plausibly state her claim that NCMC was not the "true lender" for her loan, nor has she provided sufficient factual allegations to establish plausibly that NCMC failed to provide sufficient consideration. Moreover, Plaintiff has not pleaded sufficient facts to show that the statutes of limitations should be tolled. Plaintiff alleges that she received a letter from Ocwen in December 2010 (*see* Dkt. 1 at 6), and recounts certain of its terms. (*Id*.) That, without more, does not constitute a plausible claim that Plaintiff should not be held to the statute of limitations concerning the subject deed of trust, a separate document that had been signed over four years before she received said letter. Therefore, Defendant's Motion to Dismiss this claim is granted with leave to amend.

#### b. Notices of Default

Defendant asserts that Plaintiff's claim for cancellation of the notice of default issued January 17, 2011 is moot because on May 3, 2011, a notice of Rescission of the notice of default was recorded. (Dkt. No. 33 at 6, citing Dkt. No. 34, Exh. 5.) Plaintiff does not respond to this argument. (*See* Dkt. No. 36 at 17-18.) The Court has reviewed the document and agrees that the notice of rescission has mooted Plaintiff's cancellation claim as to the notice of default filed on January 7, 2011. Plaintiff's claim that the January 2011 notice of default should be cancelled is therefore dismissed.

Defendant further contends that Plaintiff's challenge to the April 2011 notice of default is without merit. Plaintiff counters that the notice of default of April 2011 identified the "beneficiary as Deutsche as Trustee of the REMIC Trust, though the Assignment of the Deed of trust (without the Note) was recorded THREE months *after* the filing of the April NOD that Named Defendants rely on." (Dkt. 36 at 18.) Thus, Plaintiff appears to argue that Deutsche Bank should not have been designated as beneficiary on said notice of default and that therefore, the notice of default contains false statements. (*See id.*). Likewise, Plaintiff alleges that Ocwen Loan Servicing LLC should not have been identified as the beneficiary on said notice of default. (Dkt. No. 1 at 12-13.)

Plaintiff has failed to plead facts sufficient to show that, even accepting the allegation that the parties' roles were misrepresented on the April 2011 notice of default, the notice of default should be cancelled. Plaintiff has not argued that she has or will suffer "serious injury" as a result of the way in which the parties were reflected on the notice of default. *See* Civ. Code § 3412. Plaintiff concedes that she owes money on her mortgage obligation. (Dkt. No. 1 at 10.) Indeed, even assuming that there was a deficiency in the identification of parties to the notice of default, Plaintiff has not alleged that she is the victim of these errors because her obligations under the note remained unchanged; she was obligated to remit payments on her loan, and there is no allegation that holder of the interest on her mortgage loan (whoever Plaintiff believes that to be) was not properly able to pursue said notice of default. Accordingly, this claim is dismissed with leave to amend.

### c. Substitution of Trustee

Defendant argues that the substitution of trustee of October 29, 2012 is valid. (Dkt. No. 33 at 6.) The Court has reviewed the Complaint in detail and finds that Plaintiff has failed to plead that the substitution of trustee effected in October of 2012 should be cancelled. Indeed, in her Opposition to the Motion to Dismiss, Plaintiff states that prior to Defendants' Motion to Dismiss, she was "unaware of the October 29, 2012 Substitution of Trustee ("SOT")." (Dkt. No. 36 at 18.) Thus, Plaintiff effectively concedes that she has not pleaded that the subject substitution of trustee should be cancelled. Thus, Defendants' Motion to Dismiss on this issue is denied.

### d. Assignment of Deed of Trust

Plaintiff alleges that various aspects of the assignment of the deed of trust render said assignment void. (Dkt. No. 1 at 13-14.) Specifically, Plaintiff states that the individual executing the document was not a duly authorized officer of MERS, that Deutsche Bank did not tender valuable, sufficient consideration to NCMC for the assignment, that the assignment violated the terms of the Pooling and Servicing Agreement to which Deutsche Bank was bound, and that the assignment violated New York law. (*See, e.g.*, Dkt. No. 1 at 14-15.) The remaining allegations, purportedly to support Plaintiff's claim that the assignment of the deed of trust should be cancelled, are unclear. (*See id.*). Nonetheless, the Court has construed all facts in Plaintiff's favor and finds that she has not satisfied Rule 8.

The Court finds that Plaintiff has failed to plead facts sufficient to show that the assignment of the deed of trust should be cancelled. First, even accepting the allegation that the assignment of deed of trust was improperly executed, Plaintiff has not argued that she has or will suffer "serious injury" as a result of the assignment. *See* Civ. Code § 3412. Plaintiff concedes that she owes money on her mortgage obligation. (Dkt. No. 1 at 10.) Indeed, even assuming that there was a deficiency in the assignment, Plaintiff has not alleged that she is the victim of these errors because her obligations under the note remained unchanged. "Even if there were some defect in the assignment of the deed of trust, that assignment would not have changed plaintiff's payment obligations." *Simmons v. Aurora Bank, FSB*, 2013 WL 5508136 (N.D. Cal. Sept. 30, 2013) (citing *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272 (Cal. Ct. App. 2011) ("if MERS

indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note.")). To wit, Plaintiff has not argued in opposition to the Motion to Dismiss that she has been harmed, nor has she cited any paragraph in her Complaint wherein she alleges harm, specifically by the allegedly improper assignment. (*See* Dkt. No. 36 at 18-19.)

Second, Plaintiff's contention that MERS lacked the authority to assign the deed of trust for "failing to subscribe the principal for whom is claimed to act," which renders said assignment "void as a matter of law" (Opp. at 19), is belied by the facts. Again, as explained above, the Court has reviewed the subject assignment and finds that it reflects that MERS was acting as nominee for NCMC and its successors and assigns; thus, it would appear that MERS was acting on behalf of the principal for whom it acted as nominee. (Dkt. No. 34, Exh. 2.)

Third, Plaintiff claims that the assignment of the deed of trust is void because the assignment was recorded after the closing date of the Deutsche Bank National Trust Company, which Plaintiff alleges was closed to new assets as of March 1, 2007. Plaintiff relies upon *Glaski v. Bank of America National Association*, 218 Cal. App. 4th 1079 (Cal. Ct. App. 2013) for the proposition that she has standing to challenge the assignment of the deed of trust based on the securitization process. (*See* Dkt. No. 36 at 15-16.)

Plaintiff's reliance on *Glaski* to establish standing to challenge the assignment of the deed of trust is misplaced. *Glaski* represents a distinct minority view on the standing of third parties to enforce or assert claims based on alleged violations of Pooling Services Agreements ("PSA") to which they are neither parties nor third party beneficiaries. (*See* Dkt. No. 36 at 15-16.) The "majority rule" concerning a plaintiff's standing to bring such claims was articulated by the California Court of Appeal in *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515 (2013), which "rejected a plaintiff's attempt to rely on alleged deficiencies in the securitization process to challenge subsequent assignments of the promissory note." *Apostol v. CitiMortgage, Inc.*, 2013 WL 6328256, \*6-7 (N.D. Cal. Nov. 21, 2013). The *Jenkins* Court noted that because the assignment merely substituted one creditor for another, it did not affect a plaintiff's obligations under the note. *Id.* It therefore held that "a[]s an unrelated third party to the alleged securitization,

12

and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." *See Jenkins*, 216 Cal. App. 4th at 515. Even assuming that the subsequent transfers of the note were invalid, the Court concluded that plaintiff "is not the victim of such invalid transfers because her obligations under the note remained unchanged. Instead, the true victim may be an entity or individual who believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of their interest in the note." *Id.*

Indeed, courts in this District have expressly declined to follow *Glaski*. *See, e.g.*, *Banares v. Wells Fargo Bank, N.A.*, 2014 WL 985532 (N.D. Cal. March 7, 2014) (considering and rejecting *Glaski* on the merits of its analysis of New York trust law, and listing cases in this District that "have since rejected *Glaski*"); *Zapata v. Wells Fargo Bank, N.A.*, 2013 WL 6491377 (N.D. Cal. Dec. 10, 2013) ("Every court in this district that has evaluated *Glaski* has found it is unpersuasive and not binding authority."); *Subramani v. Wells Fargo Bank, N.A.,* No. C 13–1605 SC, 2013 WL 5913789 (N.D. Cal. Oct. 31, 2013); *Apostol v. CitiMortgage, Inc.*, 2013 WL 6328256 (Nov. 21, 2013), *Dahnken v. Wells Fargo Bank, N.A.,* C 13–2838 PJH, 2013 WL 5979356, *2 (N.D. Cal. Nov. 8, 2013) ("[t]he court adopts the 'majority position' of courts within this district, which is that 'plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are parties to the PSA or third party beneficiaries of the PSA.' "); *In re Sandri*, 501 B.R. 369, 374-75 (N.D. Cal. 2013) (citing cases); *see also Gilbert v. Chase Home Finance, LLC*, 2013 WL 231890 (E.D. Cal. May 28, 2013) ("A majority of district courts have held that plaintiffs [] who are not parties to a PSA do not have standing to raise violations of a PSA or to otherwise bring claims on the basis that a PSA was violated." (collecting cases)).[3]

Thus, to the extent this claim – or any other of Plaintiff's claims – turns on the application of *Glaski*, the Court will not accord persuasive weight to that opinion. However, as the nature of Plaintiff's claim and the allegations in her Complaint are unclear, the Court cannot hold that

---

[3] The Court notes that in *Glaski*, unlike the case at hand, the complaint contained forgery allegations, 218 Cal. App. 4th at 1082, 1087, and allegations regarding oral negotiations to modify the loan, *id*. at 1085.

13

Plaintiff's claim "could not possibly be cured by the allegation of other facts." Accordingly, this claim is dismissed with leave to amend.

### e. Notice of Trustee's Sale

In her Opposition, Plaintiff summarily asserts that the notice of trustee's sale did not identify "the true Trustee" and violated California Civil Code section 2924a(e). (Dkt. No. 36 at 19.) She offers no other argument for why the notice of trustee's sale should be cancelled. The Court finds that Plaintiff has failed to state a claim for cancellation of the notice of trustee's sale. First, Plaintiff's allegations substantiating her claim that the trustee identified on the Notice was not the "true Trustee" are unclear. In addition, Plaintiff has failed to allege any "serious injury" resulting from the fact that the Notice of Trustee's Sale did not identify the "true" trustee. *See* Cal. Civ. Code § 3412. Therefore, Plaintiff's claim that the notice of trustee's sale should be cancelled is dismissed with leave to amend.

### 5. Violations of California Civil Code sections 2923.55, 2923.7, and 2924.17

Plaintiff claims that Defendants violated the California Civil Code sections 2923.55, 2923.7, and 2924.17. However, the allegedly improper actions occurred before the enactment of the code sections upon which Plaintiff relies, and Plaintiff has neither identified nor argued any basis for retroactive application. The Court finds said sections are not retroactive and thus cannot apply to actions that occurred prior to their enactment. *See Gilliland v. Chase Home Fin., LLC*, 2014 WL 325318, *9 (E.D. Cal. Jan. 29, 2014) (finding that Civil Code sections 2923 and 2924, 2923.55, 2923.7, and 2924.17, as well as other statutory provisions in the California Homeowners Bill of Rights, do not apply retroactively); *Michael J. Weber Living Trust v. Wells Fargo Bank, N.A.*, 2013 WL 1196959, at *4 (N.D. Cal. Mar. 25, 2013) (holding that plaintiff's sections 2924.17 and 2914.18 claims failed because the statute did not apply retroactively); *Sabherwal v. Bank of New York Mellon*, 2013 WL 4833940, at *10 (S.D. Cal. Sept. 10, 2013) (same). This claim is therefore dismissed with prejudice.

### 6. Breach of Implied Covenant of Good Faith and Fair Dealing

In her Opposition, Plaintiff does not dispute that she has failed to state a claim for breach of the implied covenant of good faith and fair dealing, but seeks to re-plead this claim as Fraud and

14

Deceit and/or Negligent Misrepresentation. (Dkt. No. 36 at 10.) Thus, the claim is dismissed with leave to amend.

### 7. Quasi-Contract

As Plaintiff made clear in her Opposition, Plaintiff's claim for quasi-contract is in substance a claim for unjust enrichment. (Dkt. No. 36 at 21.) Plaintiff alleges that all Defendants retained payments to which they had no right. (Dkt. No. 1 at 19-20.) For the reasons stated above, however, Plaintiff has failed to allege sufficiently specific facts to make plausible her claim that Defendants had no right to collect such payments. For example, Plaintiff has failed to plausibly establish that she has standing to bring a claim that the assignment of the deed of trust is legally invalid, and therefore has failed to establish that Deutsche Bank had no right to collect payments on her loan. Moreover, Plaintiff has failed to allege sufficiently specific facts to make plausible her claim that NCMC was not the "true lender" for her loan. Due to the lack of specific factual allegations and clarity in Plaintiff's Complaint, her claim for quasi-contract is dismissed with leave to amend.

### 8. Accounting

Plaintiff alleges that an accounting is proper because she does not know how much money has been paid on her account by third-parties. (Dkt. No. 1 at 20.) However, Plaintiff does not plead that there have been any third-party payments on her behalf. In her Opposition, Plaintiff does not mention the unsubstantiated "third party payments," but instead argues that due to the complex nature of the transfers for the financial instruments at issue, an accounting is required to discern to which entities payments were made. (Dkt. No. 36 at 21-22.)

Notwithstanding this inconsistency, the Court finds that the nature of Plaintiff's claims does not support her claimed need for an accounting. "A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law." *Christopher v. First Franklin Fin. Corp.*, 2010 WL 3895351 (S.D. Cal. Sept. 29, 2010) (citing *St. James Church of Christ Holiness v. Super. Ct. of L.A. County*, 135 Cal. App. 2d 352, 359 (1955)). The nature of Plaintiff's claims is not so complex that absent an accounting, she would be unable to uncover the amounts to which she is due. Plaintiff has specifically plead she has paid Defendants

15

in excess of $55,000. (Dkt. No. 1 at 20.) Nowhere has Plaintiff alleged facts to suggest that an ordinary legal action demanding a sum certain is impracticable. Plaintiff's claim for an accounting is therefore dismissed with leave to amend.

### 9. Slander of Title

Plaintiff's claim for slander of title appears predicated on her theory that assignments or substitutions were invalid and that therefore, all entities that filed documents concerning Plaintiff's title to the subject property did so without proper authority. As set forth above in Sections 1 through 4, Plaintiff's allegations challenging the chains of title for various instruments at issue are unclear. Accordingly, insofar as Plaintiff's slander of title claim rests on those same allegations, Plaintiff's claim for slander of title is likewise unclear. This claim is therefore dismissed with leave to amend.[4]

### 10. Unfair Competition

Plaintiff alleges that due to Defendants' unfair and fraudulent business practices, she has suffered economic injury sufficient to maintain a cause of action under California Business & Professions Code section 17200 *et seq*. ("Unfair Competition Law" or "UCL"). (Dkt. No. 1 at 22-23.) As set forth in *Jenkins*, 216 Cal. App. 4th at 522-23, Plaintiff must establish both harm and causation in order to have standing to bring a claim under the UCL. Specifically, Plaintiff must plead a causal link between her economic injury and the actions of Defendants. *See Jenkins*, 216 Cal. App. 4th at 523. In support of her alleged injury, Plaintiff restates her allegations that named Defendants did not have proper authority to record instruments or to collect her loan payments. However, as explained above, Plaintiff's allegations concerning these theories are unclear and lack sufficient factual allegations to rise above a speculative level.

Moreover, even if Plaintiff can show that Defendants had no authority to record these documents, Plaintiff's complaint lacks clear factual allegations that she suffered economic injury "as a result of the defendants['] unfair business practices." *See Jenkins*, 216 Cal. App. 4th at 523.

---

[4] The Court further notes that to the extent Plaintiff's claims rely upon the legal theory articulated in *Glaski*, for the reasons set forth above, the Court declines to accord that decision persuasive weight and will follow the majority rule articulated in *Jenkins*.

16

Plaintiff's complaint does not evince any causal injury between Defendants' allegedly improper actions and the impact to Plaintiff's title, reputation, or monetary loss. Plaintiff states that she made payments according to the terms of her loan in excess of $55,000 and claims that she was harmed thereby, but overlooks the fact that under the terms of her loan, she was obligated to remit these payments. Plaintiff does not allege that she was not in default on her loan, nor does she allege that she attempted to renegotiate her loan payments such that she could remain in good standing.

Finally, certain of Plaintiff's allegations proffered to support her claim for unfair competition sound in fraud and thus are held to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). (*See, e.g.*, Dkt. No. 1 at 22 ("New Century Mortgage, MERS, Ocwen, and Deutsche Bank knew that the Assignment was false and caused the same to be recorded with the San Mateo County Recorder ..."; "On information and belief, NCMC obscured the real creditor of the funds when in truth it was a mere broker collecting fees").) Plaintiff's complaint does not "state with particularity the circumstances constituting" these and other allegedly fraudulent actions. Fed. R. Civ. P. 9(b). Accordingly, as to these and other allegations concerning Plaintiff's unfair competition claim, Plaintiff has failed to meet the pleading standard set forth in Rule 9(b).

For these reasons, Plaintiff's unfair competition claim is dismissed with leave to amend.

**11. Violation of the Federal Fair Debt Collection Practices Act**

In support of her Fair Debt Collection Practices Act claim, Plaintiff alleges that Defendants did not have proper authority to collect her loan payments or institute nonjudicial foreclosure proceedings. (*See* Dkt. No. 1 at 24.) However, as explained above, Plaintiff's complaint lacks sufficient factual allegations to make plausible her claim that Defendants did not have such authority. Because this assertion is a predicate for Plaintiff's theory that Defendants' actions qualify as "debt collector" activities and therefore fall within the scope of the Fair Debt Collection Practices Act (*see id.*; Dkt. No. 36 at 24), her claim that Defendants violated the Federal Fair Debt Collection Practices Act does not rise above a speculative level. Accordingly, Plaintiff's Fair Debt Collection Practices Act claim is dismissed with leave to amend.

**12. Violation of RESPA and TILA**

Plaintiff alleges that Defendants have violated both the Real Estate Settlement Procedure Act ("RESPA") and the Truth in Lending Act ("TILA").

TILA requires borrowers to file an action within one year from the date of the occurrence of the violation. *See* 15 U.S.C. § 1640(e). In her complaint, Plaintiff's TILA claim concerns the assignment of the deed of trust, which Plaintiff alleges occurred in July of 2011. (Dkt. No. 1 at 25.) Plaintiff filed her complaint in July 2013; Plaintiff's TILA claim is barred by the statute of limitations. Accordingly, Plaintiff's TILA claim is dismissed with prejudice.

As for Plaintiff's RESPA claim, Plaintiff has alleged that she submitted a "qualified written request" to Ocwen and contends that Ocwen's response was inadequate. (*See* Dkt. No. 1 at 25.) RESPA defines a "qualified written request" as follows:

> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012) *cert. denied*, 133 S. Ct. 2800, 186 L. Ed. 2d 861 (U.S. 2013) (citing 12 U.S.C. § 2605(e)(1)(B)). Under § 2605(e)(1)(A), a servicer must respond to such a letter if it requests or challenges "information relating to the servicing of such loan." *Id.* (citing 12 U.S.C. § 2605(e)(1)(A), (e)(2)). The Ninth Circuit has determined that pursuant to § 2605(e), a borrower's written inquiry constitutes a "qualified written request" and requires a response as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's "reasons for the belief ... that the account is in error" or "provides sufficient detail to the servicer regarding other information sought by the borrower," and

(3) seeks "information relating to the servicing of [the] loan." *Id.* (citing 12 U.S.C. § 2605(e)(1)(A)–(B)).

Here, Plaintiff's complaint alleges that she "sent a Qualified Written Request" to Ocwen. (Dkt. No. 1 at 25.) However, Plaintiff's complaint lacks sufficient factual allegations to state a claim that her letter to Ocwen was in fact a qualified written request under RESPA. Plaintiff alleges that she disputed the alleged default and requested a full accounting regarding fees, costs, and escrow accounting, but does not allege that she stated her reasons for the belief that the account was in error or provide insight on what those reasons might be. Accordingly, this claim is dismissed with leave to amend.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss is **GRANTED** with leave to amend. If Plaintiff wishes to file an amended complaint, she must do so as part of a Motion for Leave to Amend, to be heard on the Court's law and motion calendar. A proposed First Amended Complaint ("Proposed FAC") must be submitted with the motion.

The Motion for Leave to Amend shall include the following: first, it must identify the specific claims Plaintiff is alleging and the statutory basis for each claim with pincite citations to the relevant sub-section. Second, it must identify the elements of each asserted claim. Third, the motion must provide the authorities for the elements of the asserted claims, such as jury instructions or case citations. Fourth, the motion must identify *in a chart format* which paragraphs of the Proposed FAC relate to each of the required elements for the asserted claims.

Any Motion for Leave to Amend shall be filed no later than June 24, 2014. Failure to file said Motion by this date shall be construed as an inability to remedy the deficiencies in Plaintiff's complaint, and the case will be dismissed with prejudice.

This terminates Docket No. 33.

**IT IS SO ORDERED**.

Date: June 9, 2014

                                        **YVONNE GONZALEZ ROGERS**
                                **UNITED STATES DISTRICT COURT JUDGE**