1

2

3                      UNITED STATES DISTRICT COURT

4                      NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8   NAN HUI CHEN,                        Case No.: 13-CV-3352 YGR

9         Plaintiff,                     ORDER DENYING PLAINTIFF'S MOTION FOR
                                         LEAVE TO AMEND
10         v.

11  DEUTSCHE BANK NATIONAL TRUST CO., *et
    al.*,
12
          Defendants.
13

14        Plaintiff Nan Hui Chen ("plaintiff") brings this civil action against defendants Deutsche

15  Bank National Trust Company, Western Progressive, Mortgage Electronic Registration Systems,

16  Inc., and Ocwen Loan Servicing LLC (collectively "defendants") for actions relating to the

17  management of her home mortgage loan.[1]  The Court previously granted defendants' Motion to

18  Dismiss with leave to amend.  (Dkt. No. 55 ("Order").)  Plaintiff now brings the instant Motion for

19  Leave to Amend, attached to which is her Proposed First Amended Complaint ("PFAC").[2]  (Dkt.

20  No. 63.)

21        Having carefully considered the papers submitted, the pleadings in this action, and for the

22  reasons set forth below and in the Court's prior Order, the Court hereby DENIES plaintiff's Motion

23  for Leave to Amend.

24  _____

25        [1] As stated in the Court's prior Order, to date defendant Securitized Asset Backed
    Receivables, LLC has not been served.  Accordingly, Securitized Asset Back Receivables, LLC is
26  dismissed due to plaintiff's failure to prosecute.  *See* Fed. R. Civ. P. 4(m).

27        [2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court
28  determined this motion suitable for resolution without oral argument.  Accordingly, the Court
    vacated the hearing set for August 19, 2014.

United States District Court
Northern District of California

# I.   BACKGROUND

On November 1, 2006, plaintiff entered into a $206,310.00 loan with New Century Mortgage Corporation to finance the purchase of property at 4121 Shelter Creek Lane, in San Bruno, California.  (PFAC ¶ 18.)  Plaintiff signed a Deed of Trust ("DOT"), which named Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary and nominee for the lender.  (*Id.* ¶ 19.)  New Century Mortgage Corporation ("NCMC") was the lender.  (*Id.*)  First American Title Company was the trustee.  (*Id.*)  Since that time, the interest in plaintiff's loan and deed of trust has transferred ownership and plaintiff has defaulted on her mortgage payments.

On July 18, 2013, plaintiff filed the instant action to stop the trustee sale of her home, alleging that defendants are not the true interested parties in her mortgage loan.  (Dkt. No. 1.)  Defendants subsequently filed a Motion to Dismiss.  (Dkt. No. 33.)  On June 9, 2014, having considered the parties' arguments and relevant case law, the Court granted defendants' motion and provided plaintiff an opportunity to move for leave to amend.  (Dkt. No. 55.)  The Court's Order outlined specific steps plaintiff should take when filing a motion for leave to amend and drafting an amended complaint.  (*See, id.* at 19.)

After two court-granted extensions, on July 14, 2014, plaintiff filed the instant Motion for Leave to Amend and attached a PFAC.  (Dkt. No. 63.)[3]  The PFAC is not a model of clarity.  In her PFAC, plaintiff alleges that defendants fraudulently concealed and misrepresented their true roles in servicing her loan.  (PFAC ¶ 1.)  Plaintiff alleges that Defendants are "third-party strangers" to her mortgage loan and have no ownership interest entitling them to collect payments or declare a default.  (*Id.*)  She contends that defendants have "hid[den] behind the complexities of the mortgage

---

[3] Defendants have submitted for judicial notice four items in connection with its Opposition regarding plaintiff's prior bankruptcy proceedings.  (Dkt. 69, Exh. 1-4.)  Fed. R. Evid. 201 allows a court to take judicial notice of "matters of public record," but not facts that may be subject to a reasonable dispute.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).  A court should only take judicial notice of those facts in the documents that are both undisputed and *relevant* to the issues presented in the motion to dismiss.  *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n. 2 (9th Cir. 2006).  Because the Court resolves the pending motion on grounds other than defendants' judicial estoppel argument, which relates to plaintiff's representations during her bankruptcy proceeding, these four documents are not relevant to the disposition of this motion.  For this reason, judicial notice is **DENIED**.

United States District Court
Northern District of California

finance system" to "deceive Plaintiff into believing they have the right to collect" on her loan.  (*Id.*)

The gravamen of plaintiff's theory of her case is set forth in her PFAC as follows:

> In an attempt to further their fraudulent scheme and create a patina of validity to their debt collection efforts, Defendants have created a series of documents that contain materially false representations in violation of Federal and State law, and Internal Revenue Codes; by employing individuals who have no personal knowledge of the facts they attest, and falsely represent to Plaintiff, the public and this court that they have the right to take Plaintiff's property away.  Not only is Defendant's conduct a ***criminal violation*** of California's Mortgage Fraud Statute, California Penal Code § 532(f)(a)(4), and an affront to long standing property law, but their reliance on fabricated and forged documents undermine the integrity of the judicial system. Through this action Plaintiff seeks to stop Defendant's fraudulent practices.

(*Id.* (emphasis in original).)

To support her theory that defendants have perpetrated said fraud, plaintiff alleges that the originating loan documents were fraudulent.  Specifically, she contends that "on or about November 1, 2006 NCMC concealed from Plaintiff that NC Capital paid NCMC an undisclosed yield spread premium of approximately $3,502.00."  (*Id.* ¶ 90.)  Plaintiff further alleges that "Western, on behalf of Ocwen, concealed from Plaintiff that the debt was not owed to Ocwen with the knowledge that Plaintiff would rely on Western as an 'agent of the beneficiary' to be truthful in its representation of the ownership of the debt."  (*Id.* ¶ 96.)

Plaintiff also contends that because defendants did not validly transfer (or validly possess) rights to the loan, they do not now have legally cognizable interests in her loan or her property. Plaintiff alleges "Deutsche Bank as Trustee of the REMIC Trust did not acquire any legal or valid interest in the disputed DOT on the basis the [Assignment of the Deed of Trust] is void and violates the governing law of the REMIC Trust" because "NCMC had no assets to transfer as said assets had been transferred to the Liquidating Trustee and MERS failed to get authorization from the Liquidating Trustee to transfer assets in the Liquidating Trust of NCMC."  (*Id.* ¶¶ 69, 72.) Accordingly, plaintiff alleges that all instruments recorded pertaining to plaintiff's default on her mortgage, the assignments in interests, and even the deed of trust itself, are void.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1　　　In her PFAC, plaintiff alleges eight causes of action: (1) fraud and deceit, (2) cancellation of

2　instruments, (3) unjust enrichment, (4) accounting, (5) slander of title, (6) violations of California

3　Business & Professional Code § 17200 *et seq.* ("Unfair Competition Law" or "UCL"), (7)

4　violations of the Federal Debt Collection Practices Act ("FDCPA"), and (8) violations of the Real

5　Estate Settlement Procedures Act ("RESPA").  She seeks cancellation of the subject note and Deed

6　of Trust, reformation of a note and deed of trust between plaintiff and the true creditor(s),

7　accounting, disgorgement of mistaken payments, damages no less than $600,000, punitive

8　damages, and attorneys' fees and costs.

9　**II.   LEGAL STANDARDS**

10　　　**A.   Motion for Leave to Amend**

11　　　The Court generally has the sound discretion to grant or deny leave to amend.  *Swanson v.*

12　*United States Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).  Leave to amend should be freely

13　granted "unless the court determines that the allegation of other facts consistent with the challenged

14　pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture*

15　*Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  The Court "may exercise its discretion to deny

16　leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated

17　failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

18　party . . . , [and] futility of the amendment.'"  *Carvalho v. Equifax Info Servs., LLC*, 629 F.3d 876,

19　892-93 (9th Cir. 2010) (alterations in the original) (quoting *Foman v. Davis*, 371 U.S. 178, 182

20　(1962)).  A proposed amendment is futile if no set of facts can be proven under the amended

21　pleading that would constitute a valid and sufficient claim.  *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d

22　209, 214 (9th Cir. 1988) (the proper test in determining legal sufficiency of a proposed amendment

23　is identical to that used under Rule 12(b)(6)).

24　　　Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient

25　factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

26　*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

27　This "facially plausible" standard requires the plaintiff to allege facts that add up to "more than a

28　sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  Although courts

do not require "heightened fact pleading of specifics," a plaintiff must sufficiently allege facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Merely reciting the elements of a cause of action and stating conclusory allegations are insufficient. *Id.*; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

## B.  Rule 9(b)

Under Federal Rule of Civil Procedure 9(b), claims sounding in fraud are subject to a heightened pleading requirement. Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Such circumstances include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme.'" *Swartz*, 476 F.3d at 765 (alterations in the original) (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 541 (9th Cir. 1989)).

Claims subject to Rule 9(b) pleading requirements must also satisfy the ordinary pleading requirements of Rule 8, which states:

> "A pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief."

Fed. R. Civ. P. 8(a). In general, plaintiffs can have inconsistent alternative claims, but "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d).

United States District Court
Northern District of California

### III.   DISCUSSION

The Court explained in its prior Order that when filing a Motion for Leave to Amend and PFAC, plaintiff must (1) identify the specific claims and the statutory basis for each claim, (2) identify the elements of each asserted claim, (3) provide authorities for the elements of each asserted claim, and (4) present a chart identifying which paragraphs of the PFAC relate to each required element.  (Order at 19.)

Having reviewed plaintiff's motion and her PFAC, the Court finds that plaintiff has failed again to state plausibly a claim for relief as to each of the claims in the PFAC.  Accordingly, the PFAC would be immediately subject to dismissal such that amendment to the complaint would be futile.  *Foman*, 371 U.S. 182.  Plaintiff lacks standing to assert six of her eight total claims (Causes of Action 1-6).  Plaintiff's claim for violation of RESPA (Cause of Action 8) is time barred and also fails to allege harm causally linked to defendants.  Finally, plaintiff's FDCPA claim (Cause of Action 7) fails to allege defendants were "debt collectors" within the meaning of the FDCPA.

For purposes of efficiency and clarity, the Court first addresses the six claims that lack standing, and then addresses the reasons the remaining two claims fail.

### A.   CLAIMS FOR WHICH PLAINTIFF LACKS STANDING

Article III section 2 of the Constitution limits the federal courts' judicial power to deciding actual "cases" or "controversies."  U.S. CONST. art. III § 2.  "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so."  *Hollingsworth v. Perry*, --- U.S. ---, 133 S. Ct. 2652, 2661 (2013).  If a case is brought without Article III standing, the court lacks subject matter jurisdiction over the suit because there is no "case" or "controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).

To properly establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "[T]he 'injury in fact' test requires

6

more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured."  *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972).

Here, six of plaintiff's claims are predicated on her allegations that defendants failed to transfer ownership of her loan properly, such that the "true" holders of interest have been prevented from exercising their rights.  These causes of actions are: (1) fraud and deceit, (2) cancellation of instruments, (3) unjust enrichment, (4) accounting, (5) slander of title, and (6) violations of UCL. (*See generally*, PFAC at 12-24.)  Plaintiff, a third-party to the allegedly improper transfers at issue, alleges that she has been harmed by loss of property, interruption in enjoyment of the property, increased loan amount, wrongfully paid mortgage payments, and damaged credit.  (*Id.* ¶¶ 97, 102, 112, 133, 150, 162, 179.)  Because these claims all stem from the same factual theory and fail for the same reasons, the Court consolidates these issues into a single discussion.

### 1.    Lack of Injury for Defective Assignment

As a borrower, plaintiff lacks standing to challenge the transfers of interest in her loan between a transferor and transferee.  "Third-party borrowers lack standing to assert problems in the assignment of the loan" because the borrowers have not suffered an injury in fact.  *Flores v. GMAC Mortg., LLC*, Case No. 12–cv–00794 SI, 2013 WL 2049388, at *3 (N.D. Cal. May 14, 2013); *see also, Jenkins v. JP Morgan Bank, N.A.*, 216 Cal.App.4th 497, 513-14 (2013); *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272 (2011).  Essentially, "an impropriety in the transfer of a promissory note would [] affect only the parties to the transaction, not the borrower."  *Yvanova v. New Century Mortg. Corp.*, 226 Cal.App.4th 495, 172 Cal.Rptr.3d 104, 109 (2014) (*cert. granted*).[4] "[T]he relevant parties to such a transaction were the holders (transferors) of the promissory note

---

[4] The Court is aware the California Supreme Court has granted review of *Yvanova*, 331 P.3d 1275 (2014) on the following issue: "In an action for wrongful foreclosure on a deed of trust securing a home loan, does a borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?"  However, in view of authority in both state and federal courts that hold that there is no such standing, as well as plaintiff's failure to identify any prejudice or harm arising from these allegedly improper transfers in interest, *see* Section III.A, *supra*, the Court finds this case suitable for resolution at this time notwithstanding the California Supreme Court's pending review.

United States District Court
Northern District of California

1  [or other interest] and the third party acquirers (transferees) of the note [or other interest]," not

2  borrowers such as plaintiff.  *Id.* (citing *Jenkins*, 216 Cal.App.4th at 515.)

3       The widely accepted rule that borrowers cannot challenge assignments or transfers in the

4  interests of their loans makes logical sense.  Defects in transfers do not injure the borrower because

5  "[e]ven if there were some defect in the [subsequent] assignment of the deed of trust, that

6  assignment would not [] change[] plaintiff's payment obligations."  *See Simmons v. Aurora Bank,*

7  *FSB*, Case No. 13–cv–00482 HRL, 2013 WL 5508136, at *2 (N.D. Cal. Sept. 30, 2013); *see also,*

8  *Apostol v. CitiMortgage, Inc.*, Case No. 13–cv–01983 WHO, 2013 WL 6328256, at *7-8 (N.D. Cal.

9  Nov. 21, 2013); *Siliga v. Mortg. Elec. Registration Sys., Inc.*, 219 Cal.App.4th 75, 85 (2013) ("The

10  assignment of the deed of trust and the note did not change [plaintiffs'] obligations under the note,

11  and there is no reason to believe that . . . the original lender would have refrained from foreclosure

12  in these circumstances").

13       Here, plaintiff complains of the following harms: loss of her property through the

14  nonjudicial foreclosure process, interruption of her enjoyment of the property, and damaged credit.

15  A fair reading of her PFAC suggests that these harms stem from plaintiff's failure to make monthly

16  mortgage payments.  Although plaintiff alleges that the Notice of Default was faulty for failure to

17  properly identify the parties in interest, nowhere does she contest that she had actually paid her loan

18  payments; she does not deny that she was in default.  (*See* PFAC ¶ 41, 155, 158.)

19       Under controlling law, even if there were irregularities in the interest transfer and

20  assignment processes, plaintiff does not allege facts that, if proven, would establish that she was

21  "among the injured."  *Sierra Club*, 405 U.S. at 735.  Said differently, plaintiff does not allege any

22  injury "fairly traceable to the challenged action," namely the allegedly invalid transfers in interest.

23  *Friends of the Earth*, 528 U.S. at 180.  "The true victim [of the scheme plaintiff alleges] was not

24  plaintiff but the original lender, which would have suffered the unauthorized loss" of being

25  deprived its rightful interest in her mortgage loan.  *See Fontenot*, 198 Cal.App.4th at 272.  Plaintiff

26  "may not assume the theoretical claims of hypothetical transferors and transferees" to assert causes

27  of action relating to allegedly improper assignments of interests in her mortgage loan.  *Jenkins*, 216

28

8

United States District Court
Northern District of California

1    Cal.App.4th at 515.  Plaintiff would not be the victim of such invalid transfers because her

2    obligations to make mortgage payments remained unchanged.

3           Finally, plaintiff has failed to plead allegations that, if true, establish actual prejudice

4    resulting from the improper assignments or transfers in interest.  As in the instant case, plaintiffs in

5    *Dick v. Am. Home Mortg. Servicing, Inc.*, Case No. 13–cv–00201 WBS CKD, 2013 WL 5299180 at

6    *4-5 (E.D. Cal. Sept. 18, 2013) attempted to challenge a deed of trust assignment as void.

7    Acknowledging that a majority of California courts have held that "borrowers do not have standing

8    to challenge the assignment of a loan because borrowers are not party to the assignment

9    agreement," the court noted it did not even need to reach that issue because the plaintiff could not

10   establish prejudice.  *See Dick*, 2013 WL 5299180 at *3; *In re Sandri*, 501 B.R. 369, 376-77 (N.D.

11   Cal. 2013) (citing *Dick, supra*).  The court further noted that "California courts find a lack of

12   prejudice when a borrower is in default and cannot show that the allegedly improper assignment

13   interfered with the borrower's ability to pay or that the original lender would not have foreclosed

14   under the circumstances."  *Dick*, 2013 WL 5299180 at *3.  Plaintiff's proposed amended complaint

15   fails to allege facts sufficient to meet this standard.

16           **2.    *Glaski* is the Minority Rule and Does Not Control**

17           Plaintiff's PFAC relies almost exclusively on the minority legal theory expressed in *Glaski*

18   *v. Bank of America Nat'l Ass'n*, 218 Cal.App.4th 1079 (2013), which the Court has already stated

19   will not be accorded persuasive weight.  (*See* Order at 12-13.)  There, the California Court of

20   Appeals held that a borrower had standing to challenge the assignment of his note.  *See id.* at 1096.

21   The *Glaski* defendants organized the loan at issue into a trust formed under New York law, but

22   failed to assign the trust before the operative closing date, thus resulting in a technical deficiency.

23   *Id.*  The *Glaski* court recognized "that some federal district courts sitting in California have rejected

24   the post-closing date theory of invalidity on the grounds that the borrower does not have standing to

25   challenge an assignment between two other parties."  *Id.* at 1098 (citations omitted).  Nonetheless,

26   the court found the trust void under New York law, and held the plaintiff could challenge the

27   assignment despite being a third-party borrower.  *Id.* at 1095-97.

28

9

1    Multiple state court of appeals decisions conflict with *Glaski*, holding instead that a third-

2  party mortgage borrower does not have a cause of action stemming from irregularities in the chain

3  of transfer. *See, e.g., Jenkins*, 216 Cal.App.4th at 515 ("As an unrelated third party to the alleged

4  securitization, and any other subsequent transfers of the beneficial interest under the promissory

5  note, [plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling

6  and servicing agreement, relating to such transactions"); *Fontenot*, 198 Cal.App.4th at 272-73

7  (finding plaintiff had no cause of action for merely alleging irregularities in the assignment

8  process). Even when a trust was created under New York law, numerous other courts have

9  declined to follow *Glaski*. *See, e.g., Yvanova*, 172 Cal.Rptr.3d at 110 (declining to follow *Glaski*);

10  *Sporn v. JP Morgan Chase Bank N.A.*, Case No. G047501, 2014 WL 280627, at *5 (Cal. Ct. App.

11  4th Jan. 27, 2014) (finding the *Glaski* holding a minority view and declining to follow it).

12    Indeed, "[c]ourts in this District have expressly rejected *Glaski* and adhered to the majority

13  view that individuals who are not parties to a PSA [Pooling and Servicing Agreement] cannot base

14  wrongful foreclosure claims on alleged deficiencies in the PSA/securitization process." *Apostol*,

15  2013 WL 6328256, at *6-7. No court in this District has followed the minority rule articulated in

16  *Glaski*. *See Giseke v. Bank of America, N.A.*, Case No. 13–cv–4772 JST, 2014 WL 718463, at *3

17  (N.D. Cal. Feb. 23, 2014). To the contrary, "many have pointedly declined to." *Id.*; *see, e.g.,

18  Moran v. GMAC Mortg., LLC*, Case No. 13–cv–4981 LHK, 2014 WL 3853833, at *5 (N.D. Cal

19  Aug. 5, 2014) ("Plaintiff's reliance on *Glaski* is misplaced because *Glaski* does not state the

20  majority rule and its reasoning is unpersuasive"); *Banares v. Wells Fargo Bank, N.A.*, Case No. 13–

21  cv–4896 EMC, 2014 WL 985532, at *4-5 (N.D. Cal. March 7, 2014) (considering and rejecting

22  *Glaski* on the merits of its analysis of New York trust law, and listing cases in this District that

23  "have since rejected *Glaski*"); *Zapata v. Wells Fargo Bank, N.A.*, Case No. 13–cv–4288 WHA,

24  2013 WL 6491377 (N.D. Cal. Dec. 10, 2013) ("Every court in this district that has evaluated *Glaski*

25  has found it is unpersuasive and not binding authority"); *Apostol*, 2013 WL 6328256; *Dahnken v.

26  Wells Fargo Bank, N.A.*, Case No. 13–cv–2838 PJH, 2013 WL 5979356, *2 (N.D. Cal. Nov. 8,

27  2013) ("[t]he court adopts the 'majority position' of courts within this district, which is that

28  'plaintiffs lack standing to challenge noncompliance with a PSA in securitization unless they are

parties to the PSA or third party beneficiaries of the PSA'"); *Subramani v. Wells Fargo Bank, N.A.*, Case No. 13–cv–1605 SC, 2013 WL 5913789 (N.D. Cal. Oct. 31, 2013) (citations omitted); *In re Sandri*, 501 B.R. at 374-75 (noting that "the weight of authority is against *Glaski*"; citing California state and federal cases).

Plaintiff's attempt to save *Glaski* does not persuade.  Plaintiff argues *Glaski* stands for two holdings: "a) a borrower may challenge a void assignment regardless of whether they are a party to the contract, and b) that an assignment into a closed New York Trust was a void act pursuant to the trust's governing law." (Dkt. 71 at 8 ("Reply").)  Plaintiff concedes that there is significant disagreement with *Glaski's* second holding, but states the first holding "has not been challenged by any Court." (*Id.*)  In support thereof, plaintiff relies on three cases, none of which support her position. (*Id.* at 8-9.)  Two cases plaintiff cites directly contradict *Glaski*, finding *Glaski* unpersuasive and confirming that third-party borrowers lack standing. *See In re Sandri*, 501 B.R. at 378; *Yvanova*, 172 Cal.Rptr.3d at 110.  The only case plaintiff cites that could possibly support her position is *Johnson v. HSBC Bank USA, Nat. Ass'n*, Case No. 11–cv–2091 JM WVG, 2012 WL 928433 (S.D. Cal. March 19, 2012).  That decision, however, provides no reasoned analysis on the issue before this Court.  Indeed, the *Johnson* order does not discuss *Glaski* at all.  Moreover, plaintiff's contention that the first purported holding "has not been challenged by any court" is untrue as a factual matter.  As stated above, the weight of authority holds that *Glaski's* reasoning is unpersuasive, and the criticism of *Glaski* has not been limited to simply *Glaski's* questionable treatment of New York law. *See, e.g., Moran*, 2014 WL 3853833 at *5 ("[I]t is already well established that a third party should not be permitted to enforce covenants made for the benefit of others").

Accordingly, as six of plaintiff's eight causes of action – fraud, cancellation of instruments, unjust enrichment, accounting, slander of title, and UCL violations – arise from alleged assignment defects, the Court finds that plaintiff lacks standing to assert claims based on defects in the assignment process.  Plaintiff has suffered no injury as a result of these defects; her payment obligations remained unchanged.  Moreover, there is no causal link between the harm plaintiff alleges and defendants' alleged acts.  Given that each of these six claims would be immediately

subject to dismissal, amendment would be futile. *Foman*, 371 U.S. at 182. Plaintiff's motion for

leave to amend these six claims (Causes of Action 1-6) is therefore **DENIED**.[5]

### B.   PLAINTIFF'S REMAINING CLAIMS

#### 1.   RESPA Claim

The Court next addresses plaintiff's claim for violations of RESPA (Cause of Action 8).

Plaintiff alleges two violations of the RESPA statute: 12 U.S.C. section 2605 ("Section 2605") and

12 U.S.C. section 2607 ("Section 2607"). (PFAC at 25-28.)

First, plaintiff alleges Ocwen violated Section 2605 "by failing to provide a detailed

accounting of the alleged past due payments due to the creditor as requested by Plaintiff." (*Id.* ¶

197.) Section 2605 governs the duty of loan servicers to respond to borrowers' inquiries. "If any

servicer of a federally related mortgage loan receives a qualified written request from the borrower

. . . for information relating to the servicing of such loan, the servicer shall provide a written

---

[5] Plaintiff's fraud allegations also do not achieve the requisite level of specificity under Rule 9(b). *See Swartz*, 476 F.3d at 764. Plaintiff fails to plead sufficiently the final two elements of fraud: ". . . (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Boschma v. Home Loan Ctr., Inc.*, 198 Cal.App.4th 230, 248 (2011) (citations omitted). Plaintiff alleges she was "unaware of the fact" that defendants were acting fraudulently regarding her loan because she is an unsophisticated consumer. (PFAC at ¶¶ 91, 92.) While it is questionable this allegation alone meets the heightened pleading requirement of Rule 9(b), nowhere in plaintiff's PFAC does she allege facts to show she "would not have acted as [s]he did if [s]he had known of he concealed or suppressed fact." *Boschma*, 198 Cal.App.4th at 248. In addition, plaintiff did not, and cannot, plead facts to show she sustained damage as a result of the concealment. Nowhere in the PFAC does plaintiff allege she relied on the fraudulent statements or concealment to her detriment. Thus, she has not sufficiently pleaded facts, taken as true in the light most favorable to the plaintiff, to meet all the elements of fraud.

In addition, plaintiff's UCL claim also fails to meet the requisite level of specificity under the Federal Rules. Because plaintiff's UCL claim is grounded in fraud, "the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (citations omitted). Plaintiff merely summarily alleges defendants violated the UCL because they failed to identify the true creditor, lacked consideration, and should have known the loan violated state and federal law. (*Id.* at ¶¶ 54, 56, 61.) Plaintiff's allegations regarding "a causal link to her economic injury" are insufficient. *Jenkins*, 216 Cal.App.4th at 523. Plaintiff cannot plead facts to show how defendants' allegedly unlawful or fraudulent business acts caused her injury because the harm plaintiff suffered was of her own making. Thus, plaintiff's UCL allegations do not meet the requisite 9(b) pleading standard.

response acknowledging receipt of the correspondence within 5 days." 12 U.S.C. § 2605(e)(1)(A). A qualified written request ("QWR") is "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer" that includes "the name and account of the borrower" and "a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by borrower." 12 U.S.C. § 2605(e)(1)(B). No later than 30 days after the receipt of the QWR, the servicer shall "provide the borrower with a written explanation or clarification that includes: (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(B).

Here, plaintiff alleges she sent a series of QWRs to Ocwen stating on December 9, 2010 seeking confirmation of the creditor's identity because she was concerned with who owned her loan. (PFAC ¶¶ 191-92.) Plaintiff also alleges Ocwen sent two debt validation letters in early 2011 with conflicting statements of who owned the loan.[6] (*Id.* ¶ 193.) Because of this conflicting information, plaintiff specifically emphasizes in the QWRs her concerns about the payments being made to the true creditor. (*Id.* ¶ 194.) In September 2011, Ocwen replied to plaintiff's QWRs with an acknowledgment letter and only a partial reply. (*Id.* ¶ 195.) Plaintiff alleges "Ocwen provided only the payment history made by Plaintiff but refused to acknowledge the principal balance of the loan with the creditor." (*Id.*) Thus, plaintiff alleges that Ocwen violated 2605 RESPA by "failing to provide a detailed accounting of the alleged past due payments due to the creditor." (*Id.* ¶ 197.)

Second, plaintiff alleges NCMC and NC Capital violated Section 2607 with the alleged table-funding scheme. Section 2607 states "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding" involving a federally related mortgage. 12 U.S.C. § 2607(a). Additionally, "[n]o person shall give and no person shall

---

[6] "In a debt validation letter sent by Ocwen agents on January 21, 2011, the letter claimed the debt was owed to Ocwen; which conflicted with the February 2011 letter stating the loan was one of many in the Securitized Asset Backed Receivables, LLC Trust 2007-BRI Mortgage Pass Through Certificates, Series 2007-BR1." (PFAC ¶ 193.)

United States District Court
Northern District of California

accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). Thus, plaintiff alleges the "illegal yield spread premium [table-funding scheme] between NCMC and NC Capital" and NCMC's "failure to disclose the yield spread premium to Plaintiff" violated Section 2607. (*Id.* ¶ 204; *see also*, ¶¶ 49-51.)

Plaintiff's RESPA claim fail for two separate reasons: (1) the statutes of limitations have run as to plaintiff's Section 2607 claim and plaintiff has insufficiently alleged a basis for equitable tolling, and (2) plaintiff has not actually stated a claim for either her Section 2605 and 2607 claims. Accordingly, for purposes of clarity, the Court will divide its discussion into two sections.

### a.    Statutes of Limitations as to Plaintiffs' Section 2607 Claim

Claims under Section 2607, which prohibits kickbacks and unearned fees, must be brought within one year of the alleged violation. *See* 12 U.S.C. § 2614. The parties do not dispute that the one-year statute applies to her Section 2607 claim. Rather, the issue is one of tolling.

Plaintiff alleges defendants' "table-funding" scheme violated Section 2607. (*Id.* ¶ 204.) This claim became time-barred on November 1, 2007, one year after the alleged table funding took place. (*Id.* at ¶ 90.) Plaintiff argues the statutes of limitations should be tolled because "Plaintiff was kept ignorant of critical information required for prosecution of her claims, without any fault or lack of diligence on her part." (Reply at 6.) In their Opposition, defendants argue plaintiff's attempt to plead around the RESPA statutes of limitations, by alleging "it was not until July of 2013 that plaintiff became aware of the table funding arrangement" (PFAC at ¶ 206), is insufficient and the statutes of limitations have run. (Dkt. 68 at 14.)

While a statute of limitations typically begins to run from the time the plaintiff is injured, the "discovery rule" tolls a statute of limitations until the plaintiff discovers, or has reason to discover, the cause of action. *Harper v. Lugbauer*, Case No. 11–cv–1306, 2011 WL 6329870, at *2 (N.D. Cal. Nov. 29, 2011) (citing *Pooshs v. Philip Morris USA, Inc.*, 51 Cal.4th 788, 797-98 (2011)). "Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, [courts should] look to whether the plaintiffs have reason to

14

at least suspect that a type of wrongdoing has injured them." *Engineering v. City and County of San Francisco*, Case No. 08–cv–4022 SI, 2010 WL 816831, at *2 (N.D. Cal. Mar. 9, 2010) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005)).  A plaintiff has reason to discover a cause of action when she "has reason at least to suspect a factual basis for its elements." *Nogart v. Upjohn Co.*, 21 Cal.4th 383, 398 (1999).  To properly invoke the discovery rule, plaintiff must plead sufficient facts showing: "(1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *McKelvey v. Boeing N. Am., Inc.*, 74 Cal.App.4th 151, 160 (1999) (emphasis in original) (*superseded by statute on another point as stated in Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal.4th 623, 637 n. 8 (2007)).  "The burden is on the plaintiff to show diligence," and "conclusory allegations" will not suffice. *Harper*, 2011 WL 6329870, at *2 (citing *McKelvey*, 74 Cal.App.4th at 160).

The Court finds that plaintiff has failed to plead sufficient facts to demonstrate either her diligence or her inability to have made earlier discovery of the alleged table funding scheme.  First, the allegations in the PFAC reveal that plaintiff had ample reason to discover her Section 2607 cause of action before the date she claims.  According to her PFAC, plaintiff first began to question the ownership of her loan in 2010.  (PFAC ¶¶ 191-94.)  Taking that as true, as is required, plaintiff admits that as of 2010 she had cause to become suspicious about the origins of her loan and the processing of her loan.  However, Plaintiff pleads no facts sufficient to show her diligence in discovering this alleged scheme.  Plaintiff merely alleges the statutes of limitations should be tolled until 2013 for all causes of action because defendants were concealing information.  (PFAC ¶¶ 83, 206.)  Plaintiff alleges she is an "unsophisticated consumer" lacking the ability to discover this type of information, even with due diligence.  (*Id.* ¶ 205; *see also*, Reply at 4.)  However, plaintiff has pleaded no facts to demonstrate what diligence she ultimately undertook to discover the defendants' concealment, other than her QWR request submitted in 2010, and why her ultimate discovery occurred as quickly as was possible.

Finally, plaintiff's allegations concerning the nature of defendants' efforts to conceal their fraudulent scheme lack the requisite degree of specificity to allow the Court to conclude reasonably that plaintiff was actually unable to discover this information until 2013.  The gravamen of

United States District Court
Northern District of California

plaintiff's RESPA claim is that defendants actively concealed information to perpetrate a fraud. (PFAC ¶¶ 49, 204-05.)  Accordingly, as plaintiff was previously advised, she is obligated to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Her allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz*, 476 F.3d at 764 (citations omitted). She fails to do so.  Thus, plaintiff's RESPA allegations sounding in fraud fail to meet the level of specificity that Rule 9(b) requires.

### b.    *Lack of Causal Harm*

In addition to the statute of limitations issue, plaintiff also fails to allege harm caused by defendants' conduct relative to both her RESPA claims.

The RESPA statute states that anyone who violates RESPA shall be liable for damages.  12 U.S.C. § 2605(f).  While the statute does not create a pleading standard, courts have read the statute to require a showing of pecuniary damages.  *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("alleging a breach of RESPA duties alone does not state a claim under RESPA.  Plaintiff must, at a minimum, also allege that the breach resulted in actual damages"). Plaintiffs must also show a causal link between RESPA breach and the actual harm.  *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (citing *Singh v. Wash. Mut. Bank*, Case No. 09–cv–2771 MMC, 2009 WL 2588885, at *5 (N.D. Cal. Aug. 19, 2009) (dismissing RESPA claim because "[i]n particular, plaintiffs have failed to allege any facts in support of their conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorney fees") (quotation marks and citations omitted)).

Here, when construed liberally in her favor, plaintiff's RESPA allegations do not establish that she experienced actual harm.  Plaintiff alleges no facts beyond the speculative and conclusory to show that defendants' participation in a table-funding scheme or failure to respond properly to her QWRs were the causes for the harms of which she complains.  For example, Plaintiff does not claim she would have continued to make payments if there was no table-funding scheme or if Ocwen had properly responded to her QWRs.  Rather, as stated above in Section III.A.1, *supra*, the harm about which plaintiff complains, fairly construed, stems from her failure to make timely

mortgage payments.  (*See* PFAC ¶¶ 126, 129, 132 ("Plaintiff alleges said payments were mistaken payments intended for the true creditor").)

For the reasons stated above, plaintiff has not pleaded a basis for tolling the statutes of limitation for her RESPA claim and has failed to allege harm causally linked to defendants' alleged RESPA violations.  For these reasons, amendment would be futile.  *Foman*, 371 U.S. at 182.  Accordingly, plaintiff's motion to amend her RESPA claim is hereby **DENIED**.

### 2.   FDCPA Claim

Plaintiff alleges defendants violated the FDCPA (Cause of Action 7).  To state a claim under the FDCPA, "a plaintiff must allege facts that establish the following: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualified as a 'debt collector' under the FDCPA; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA."  *Adesokan v. U.S. Bank, N.A.*, Case No. 11–cv–1236 LJO SKO, 2011 WL 5241178, at *4 (E.D. Cal. Oct. 31, 2011) (citations omitted).  Insofar as plaintiff's FDCPA claim turns on her theory that defendants perpetrated a fraud, this claim is also subject to the heightened pleading requirement in Rule 9(b).

Plaintiff asserts that defendants are "debt collectors," and that the non-judicial foreclosure qualifies as a form of "debt collection," to support her FDCPA claim.  (*See* PFAC ¶ 181.)  However, the weight of authority this District counsels that the FDCPA does not apply to actions taken by lenders or their agents when foreclosing on a lender's security interest under a deed of trust in a non-judicial foreclosure.  *See, e.g., Cromwell v. Deutsche Bank Nat. Trust Co.*, Case No. 11–cv–2693 PJH, 2012 WL 244928, at *3 (N.D. Cal. Jan. 25, 2012) (non-judicial foreclosures "do not amount to debt collection because . . . the lender or its agent is simply foreclosing on the lender's interest in the property as secured by the Deed of Trust"); *Garcia v. American Home Mortg. Serv., Inc.*, Case No. 11–cv–3678 LHK, 2011 WL 6141047 at *4 (N.D. Cal. Dec. 9, 2011) ("non-judicial foreclosure does not constitute 'debt collection' as defined by the [FDCPA]"); *Garfinkle v. JPMorgan Chase Bank*, Case No. 11–cv–1636 CW, 2011 WL 3157157 at *3 (N.D. Cal. July 26, 2011) (collecting cases concluding foreclosing on a property is not debt collection within the meaning of the FDCPA).  These courts rely heavily on the reasoning in *Hulse v. Ocwen*

17

United States District Court
Northern District of California

*Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Ore. 2002).  There, plaintiffs challenged their creditor's right to foreclose due to an FDCPA violation.  *Hulse*, 195 F. Supp. 2d at 1203.  The court rejected the plaintiffs' claims because "the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA."  *Id.* at 1204.  The court explained that "[f]oreclosing on a trust deed is distinct from the collection of the obligation to pay money."  *Id.*  The *Hulse* court continued by stating: "[p]ayment of funds is not the object of the foreclosure action.  Rather, the lender is foreclosing its interest in the property."  *Id.*

Some courts in this District have found *Hulse*'s reasoning overly broad.  *See Harvey G. Ottovich Revocable Living Trust dated May 12, 2006 v. Wash. Mut., Inc.*, Case No. 10–cv–02842 WHA, 2010 WL 3769459, at *4 (N.D. Cal. Sept. 22, 2010) (denying defendants' motion to dismiss plaintiffs' FDCPA claim and noting that "*Hulse* has been found to be overly broad in the categorical exclusions it provided under federal law to lenders"); *Carter v. Deutsche Bank Nat. Trust Co.*, Case No. 09–cv–3033 BZ, 2010 WL 1875718, at *1-2 (N.D. Cal. May 7, 2010) (discussing split in authority and declining to dismiss plaintiff's FDCPA claim at the pleading stage).[7]  However, many of these cases involved alleged conduct that was more than just non-judicial foreclosure acts.  *See, e.g., Wilson*, 443 F.3d at 376-77 (defendant allegedly made a specific request for money to reinstate the plaintiffs' account after foreclosure proceedings began); *Harvey G. Ottovich*, 2010 WL 3769459, at *4 (plaintiffs alleged that defendants repeatedly obfuscated the truth with regard to the loan amounts and payments).  Here, as explained throughout this Order, plaintiff's theory that defendants perpetrated a fraud and engaged in financial chicanery and therefore did not have real interests in her loan is not grounded in factual allegations sufficient to make this theory plausible.  For the same reason, plaintiff has not alleged facts beyond the speculative that raise any inference that defendants were not undertaking non-judicial foreclosure

---

[7] *Wilson v. Draper & Goldberg PLLC*, 443 F.3d 373, 376-77 (4th Cir. 2006) ("'debt' remained a 'debt' even after foreclosure proceedings commenced" and "foreclosure proceedings were attempts to collect that debt").

1   acts, but rather, were perpetrating fraud and acting as "debt collectors" within the meaning of the

2   FDCPA.[8]

3          In sum, the Court, like many courts in this District, finds that at most, plaintiff's FDCPA

4   allegations relate to non-judicial foreclosure activities.  Such actions do not constitute "debt

5   collection" and defendants are not "debt collectors" within the meaning of the FDCPA.

6   Accordingly, amendment is futile.  *Foman*, 371 U.S. at 182.  Plaintiff's motion for leave to amend

7   her FDCPA claim is **DENIED**.

8   **IV.    CONCLUSION**

9          For the reasons set forth above, plaintiff's motion for leave to amend is denied.  First,

10   amendment would be futile, for each of plaintiff's eight claims would be immediately subject to

11   dismissal.  *Carvalho*, 629 F.3d at 892-93 (citing *Foman*, 371 U.S. at 182).  For six of her claims –

12   fraud, cancellation of instruments, unjust enrichment, accounting, slander of title, and UCL

13   violations – plaintiff lacks standing.  Plaintiff's fraud and UCL claims also fail to meet the required

14   pleading standard.  In addition, Plaintiff's RESPA claims are either barred by the applicable statute

15   of limitations and/or fails to allege harm casually linked to defendants' actions.  Lastly, plaintiff's

16   FDCPA fails because her allegations relate to a non-judicial foreclosure, and thus the statute does

17   not apply.

18          Second, plaintiff's "[r]epeated failure to cure deficiencies by amendments previously

19   allowed," provides another basis to deny leave to amend.  *Foman*, 371 U.S. at 182.  In its previous

20   Order, plaintiff was provided detailed instructions to remedy her complaint, and was directed not to

21   rely on *Glaski*.  After granting plaintiff two extensions of the deadline to file her Motion for Leave

22

23   _____

24   [8] In addition, because plaintiff's allegations concerning defendants' debt collection actions
are grounded in fraud, she must also satisfy the heightened pleading requirement of Federal Rule of

25   Civil Procedure 9(b).  (*See* PFAC at 24-25.)  The Court finds that plaintiff's FDCPA claim does not
meet this standard.  Not only has plaintiff failed to allege facts that, taken together and construed in

26   her favor, fail to "raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, she
has also failed to set forth facts supporting her allegations of fraud underlying her FDCPA claim

27   with the required level of specificity.  *See* Fed. R. Civ. P. 9(b).

28

United States District Court
Northern District of California

19

to Amend, plaintiff continues to rely in large part on *Glaski*, and her PFAC lacks factual allegations to support her claim of harm.

Finally, the Court may exercise its discretion to deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant." *Foman*, 371 U.S. at 182. According to plaintiff's original complaint, she was twice offered loan modifications, once in 2010 and another in early 2011, which she apparently did not accept. (*See* Dkt. No. 1 ¶¶ 26, 31.) According to the PFAC, a Notice of Default was recorded against plaintiff in April of 2011. (PFAC ¶ 39.) Nowhere does plaintiff state that the default was in error because she had made mortgage payments, nor does she allege that she has made mortgage payments since that time. The Court recognizes that "foreclosures are a far too frequent occurrence in today's difficult financial times. But the hardship must not become a haven for those who, as here, do not appear to make any good faith effort to resolve the issue but, instead, seek shelter in minor ministerial omissions or speculative acts that neither misled nor prejudiced them." *Shuster v. BAC Home Loans Servicing, LP*, 211 Cal.App.4th 505, 513 (2012).

Accordingly, plaintiff's Motion for Leave to Amend is **DENIED**. Therefore, the claims contained in her proposed first amended complaint are **DISMISSED** with prejudice.

No later than December 5, 2014, defendants shall provide the Court with a form of judgment after allowing plaintiff a reasonable opportunity to comment as to form.

This terminates Docket No. 63.

**IT IS SO ORDERED**.

Date: November 24, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**